IDA STOCKDALE. The (COMINGS v.). See Case No. 3,052.

---

## Case No. 7,000.

### The IDDO KIMBALL.

[8 Ben. 297.] [1]

District Court, S. D. New York. Dec., 1875.

DELIVERY OF CARGO—BILL OF LADING—NOTICE TO CONSIGNEE—FIRE.

1. A barque brought to New York from Savannah one hundred bales of cotton, under a bill of lading which excepted "the dangers of the seas and fire." The consignees filed a libel against her, alleging that she had delivered only eighty bales in good order, and about the quantity of seven more damaged by fire, and seeking to recover damages for the failure to deliver the whole in good order. The vessel arrived in New York on the 12th of October, 1865. The fire occurred on the dock on the 20th of October, about 11 a. m. A notice was published in a newspaper on the 13th of October, that the vessel would begin to discharge cargo that day. The consignees gave evidence to show that they went to the vessel every day, for several days before the fire, to get their cotton, and were on each day told that it would not be discharged on that day. On the part of the vessel evidence was given to show that all of the cotton which was delivered in good order, was discharged and taken away by the consignees before the fire: Held, that the evidence showed that part of the cotton was received and taken away by the consignees on the 17th or 18th of October.

2. Therefore, the consignees had notice to attend and receive the rest of the cotton as fast as it should be discharged.

3. Such of the cotton as came out on the day of the fire was separated on the pier so that it could have been readily taken away, and there was time to have taken it away before the fire.

4. There had been such a delivery of the cotton as to relieve the vessel from responsibility.

In admiralty.

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

W. Tracy, for libellants.
D. A. Hawkins, for claimant.

BLATCHFORD, District Judge. This libel is filed to recover the value of certain cotton in bales, being part of 100 bales, shipped by the libellants, at Savannah, Georgia, on the barque Iddo Kimball, for New York, on the 14th of September, 1865. under a bill of lading. The bill of lading excepted "the dangers of the seas and fire." The libel alleges that the barque arrived at New York on or about the 12th of October, 1865; that, on or about the 21st and 23d days of October, 1865, she commenced delivering said cotton to the consignees of it, but delivered to them only 80 bales of the cotton in good condition, and an equivalent quantity to about 7 bales in a bad condition and very much injured by fire; that the fire by which the same was injured was caused by the gross negligence and carelessness of the master and mariners of the barque, after her arrival at New York; and that the value of the cotton not delivered was $3,575.00 and the damage occasioned to the quantity delivered equivalent to 7 bales, injured by fire, was $240.00.

The answer alleges that the vessel, soon after her arrival at New York on the 12th of October, 1865, commenced delivering the cotton to its consignees; that she discharged and delivered to the consignees the whole 100 bales in as good order as received; that, after such discharge and delivery, a part of the 100 bales were, while lying upon pier 36, East river, where they had been discharged from the vessel, destroyed by a fire that occurred on the pier; that another part of the 100 bales, after they were discharged and delivered on said pier, were damaged by said fire; and that said fire was not caused by the negligence or carelessness of the master or mariners of the vessel.

The fire occurred on the 20th of October, 1865. The libel was filed on the 4th of November following, and the answer on the 28th of November following. The libel does not state when the fire occurred, nor does it state whether the 80 bales of cotton which were delivered in good condition, were delivered before the fire occurred. As the evidence is clear that the fire occurred on the 20th of October, and as the libel alleges that the vessel commenced delivering the cotton on the 21st of October, the import of the libel is, that none of the cotton was delivered until after the fire occurred. The answer alleges distinctly that the fire occurred after the whole 100 bales were delivered. The libellants admit that they received 80 bales in good order, and the question in dispute is as to who is responsible for the loss and damage by fire in respect of the 20 bales. The issue as to when the uninjured bales were delivered, with reference to the time of the fire, was made a prominent one on the trial, and is important on the point as to whether the consignees had notice that the

vessel was ready to discharge the cotton in question.

That the vessel arrived on the 12th of October is shown. A notice was published in a newspaper on the 13th of October, that she would commence to discharge her cargo on that day, at pier 37, East river. Mr. Savery, one of the libellants, testifies, in substance, that he went to the vessel every day for three or four days before the day of the fire, and saw each day the mate, who informed him each day that his cotton would not be discharged on that day; and that on the morning of the 20th he was told the same thing by the mate. The fire occurred soon after 11 o'clock in the morning. Wehn, the cartman of the consignees, testifies that he learned of the arrival of the vessel and that she had a berth, and then went to her at her pier and saw a man on board who was in charge of the cotton, and announced that he had come for the 100 bales in question; that he was told in reply that it would be a day or two before the cotton would be discharged; and that he went to the vessel and sent to the vessel daily for three or four days before the day of the fire, and was always informed that it could not be told when the cotton would be out. This testimony is adduced to show that the cotton which was on the pier at the time of the fire was the first of the 100 bales which had been discharged. On the part of the claimant it is contended, that, in fact, all of the 100 bales, except what was in the fire (and perhaps 3 other bales still on board), had been discharged on the pier and taken away by the carts of the consignees on a day or days prior to the day of the fire; that none of the 100 bales remained on the pier during the night previous to the day of the fire; and that all of the 100 bales that was in the fire had been discharged from the vessel on the morning of the day of the fire. If this be so, of course the testimony of Savery and Wehn must be incorrect.

Carman, one of the consignees of the vessel, testifies that the vessel began to discharge on the 14th, Saturday, and continued to discharge every working day; that the first of the 100 bales was taken away on the 17th or 18th, and more or less of it was taken away every day until the fire occurred; and that over 80 bales were taken away before the day of the fire. A receipt book is produced, which is so far proved as to show, I think, with reasonable certainty, that some of the 100 bales were received by the cartmen of the consignees as early as the 17th or 18th. If this was so, of course they had notice to attend and receive the rest of the cotton as fast as it should be discharged. The evidence is, that the discharge of the cotton on board (some 950 bales) was continuous; that such of the 100 bales as came out of the vessel on the day of the fire, were separated on the pier in such manner that they could have been readily taken by the

cartmen of the consignees; and that there was ample time for them to have been taken away by such cartmen after they were so put on the wharf and before the fire occurred. I think that, on the whole evidence, it must be held that the lost and damaged cotton was discharged on the wharf in good order and in a proper manner, and with such notice to the consignees as to constitute a delivery of the cotton to them, so as to relieve the vessel from responsibility. The libel must be dismissed, with costs.